# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

PATRICIA NAVARRO

    Plaintiff,

v.

MARTIN O'MALLEY, COMMISSIONER OF SOCIAL SECURITY,[1]

    Defendant.

No. 1: 22-cv-01563-SKO

**ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT**

(Doc. 1)

## I. INTRODUCTION

Plaintiff Patricia Navarro ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). Doc. 1. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

## II. BACKGROUND

Plaintiff was born on May 24, 1983. (Administrative Record ("AR") 239). She filed a claim for DIB on September 9, 2019, alleging a disability onset date of January 1, 2009. (AR 15, 251). In her application, she alleged "severe dizziness, severe nausea, severe nervousness, neck pain, back pain, depression, PTSD, stress, anxiety, worriedness/sadness, insomnia, migraine, memory loss, hand weakness, learning limited." (AR 250). Plaintiff has an eighth-grade education

---

[1] On December 20, 2023, Martin O'Malley was named Commissioner of the Social Security Administration. *See* https://www.ssa.gov/history/commissioners.html. He is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in [their] official capacity, be the proper defendant.").

[2] The parties have consented to the jurisdiction of the U.S. Magistrate Judge. (*See* Doc. 11.)

1

and no previous work experience. (AR 251-52). Because the parties are familiar with the medical evidence and the only issue is related to the ALJ's findings at step five, the medical evidence is not summarized here.

The Commissioner denied Plaintiff's application for benefits initially on January 14, 2020, and again upon reconsideration on June 5, 2020. (AR 91, 99). Plaintiff requested a telephonic hearing before an Administrative Law Judge (an "ALJ"), and the parties attended a hearing on December 20, 2021. (AR 36-49).

In a decision dated December 29, 2021, the ALJ found that Plaintiff was not disabled as defined by the Act after conducting the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 12-35). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since September 9, 2019 (step one). (AR 17). At step two, the ALJ found that Plaintiff suffers from the following severe impairments: vertigo; dextroscoliosis of the thoracic spine; segmental and somatic dysfunction and levoscoliosis of the lumbar spine; borderline intellectual functioning; and post-traumatic stress disorder (PTSD). (AR 18). Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 18).

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[3] and applied the assessment at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ found Plaintiff was limited to medium work as defined in 20 C.F.R. 404.1567(b) with the following limitations:

---

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

climbing and balancing occasionally; stooping, kneeling, crouching, and crawling frequently; must avoid concentrated exposure to extreme vibration; must avoid all exposure to hazards, such as heavy, dangerous machinery and unprotected heights; is limited to simple, routine, and repetitive 1-2 step tasks requiring only simple decisions and no fast-paced production requirements, such as assembly line work or piecemeal quotas; and is capable of adapting to changes in the work environment, meaning changes in work responsibilities or workplace, which are explained in advance of implementation and implemented gradually over time.

(AR 22).

At steps four and five, the ALJ found that the transferability of job skills was not at issue because Plaintiff did not have any relevant past work. (AR 29). The ALJ concluded that considering her age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (AR 29). The ALJ based this finding on the testimony of the Vocational Expert ("VE"), who testified Plaintiff could perform at the medium and unskilled level of exertion with a specific vocational preparation ("SVP") of 2, which would include the following jobs: stores labor/order picker (Dictionary of Occupational Titles ("DOT") 922.687-058); laundry laborer (DOT 361.687-018)[4]; and automobile detailer (DOT 915.687-034). (AR 29-30). The ALJ concluded Plaintiff was not disabled under the Social Security Act. (AR 30).

Plaintiff sought review of this decision before the Appeals Council, which denied review on September 30, 2022. (AR 1). Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

### III.   LEGAL STANDARDS

**A.   Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

---

[4] The ALJ referred to this job as a "laundry worker," but the title of the position in the DOT is "laundry laborer." DOT, *available at* 1991 WL 672992.

However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that he is not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.   Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in

the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.   DISCUSSION

Plaintiff argues the ALJ erred at step five of the analysis by failing to resolve conflicts between the Plaintiff's RFC, the VE's testimony and the DOT, resulting in an insignificant number of available jobs in the national economy.  For the reasons below, the Court finds the ALJ did not err, and thus, reversal is not warranted.

**A.   Legal Standard**

At step five of the evaluation process, "the Commissioner has the burden to identify specific jobs existing in substantial numbers in the national economy that a claimant can perform despite his identified limitations." *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995)) (cleaned up).  To determine a claimant's RFC, an ALJ may rely on VE testimony about jobs the applicant can perform despite his or her limitations. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).  The DOT, a Department of Labor resources that details the specific requirements of various occupations, guides the analysis. *Gutierrez v. Colvin*, 844 F.3d 804, 807 (9th Cir. 2016).  The DOT is the "SSA's 'primary source of reliable job information' regarding jobs that exist in the national economy." *Zavalin*, 778 F.3d at 845-46 (quoting *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990)).  "The DOT lists maximum requirements of occupations generally performed, not the range of requirements of a particular job as it is performed in specific settings." SSR 00-4p, *available at* 2000 WL 1898704 (Dec. 4, 2000). "The term 'occupation,' as used in the DOT, refers to the collective description of those jobs. Each occupation represents numerous jobs." *Id.*

"When there is an apparent conflict between the vocational expert's testimony and the DOT . . . the ALJ is required to reconcile the inconsistency." *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015) (citing *Massachi v. Astrue*, 486 F.3d 1149, 1153–54 (9th Cir. 2007)).  "For a difference between an expert's testimony and the Dictionary's listings to be fairly characterized as a conflict, it must be obvious or apparent." *Gutierrez*, 844 F.3d at 807.  Obvious or apparent conflicts typically involve the DOT's listing of job requirements that are "essential, integral, or expected." *Id.* "[T]asks that aren't essential, integral, or expected parts of a job are less likely to qualify as

apparent conflicts that the ALJ must ask about. Likewise, where the job itself is a familiar one—like cashiering—less scrutiny by the ALJ is required." *Id.* To reconcile the inconsistency, the ALJ must ask the expert to explain the conflict and then determine whether the VE's explanation is reasonable. *Zavalin*, 778 F.3d at 846. An unresolved inconsistency may create a "gap" in the record preventing a reviewing court from determining whether the ALJ's decision is supported by substantial evidence. *Id.*

**B.     Analysis**

Plaintiff first contends the ALJ's RFC limitation of one- to two-step tasks is irreconcilable with the Reasoning Level Two requirements of a stores laborer/order picker and automobile detailer. Occupations listed in the DOT are assigned a GED Reasoning Level, which ranges from Level One (requiring the most basic reasoning) to Level Six (the most complex). *Dictionary of Occupational Titles*, App. C § III, *available at* 1991 WL 688702 (2016). The lowest two levels require a person to perform the following in an employment position:

> Reasoning Level One: Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.
>
> Reasoning Level Two: Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

*Id.* Under the DOT, a stores laborer and automobile detailer are Reasoning Level 2 occupations. DOT 922.687-058, *available at* 1991 WL 688132; DOT 915.687-034, *available at* 1991 WL 687878. The Ninth Circuit has recognized that an apparent conflict exists when a claimant's RFC limits her to one- to two-step tasks and a VE testifies the claimant may work positions requiring Reasoning Level Two. *Rounds v. Commissioner Social Security Admin.*, 807 F.3d 996, 1003 (9th Cir 2015) ("There was an apparent conflict between [claimant's] RFC, which limits her to performing one- and two-step tasks, and the demands of Level Two reasoning.").

The Commissioner does not dispute the ALJ failed to make any findings or otherwise elicit testimony from the VE regarding why Plaintiff could perform Reasoning Level Two occupations

despite her limitations.  The Commissioner instead contends this error was not harmful, as the remaining job recognized by the ALJ and the VE (laundry laborer) exists in sufficient numbers in the national economy to support a finding of not disabled.  (Doc. 19 at 6).  Plaintiff counters the DOT description of a laundry laborer conflicts with the DOT and her RFC because the job would impermissibly expose her to hazards.  (Doc. 17 at 12-14).

Plaintiff's RFC provides she "must avoid all exposure to hazards, such as heavy, dangerous machinery and unprotected heights."  (AR 22).  The DOT describes the job of a laundry laborer as the following:

> Prepares laundry for processing and distributes laundry, performing any combination of the following duties: Opens bundles of soiled laundry.  Places bundles onto conveyor belt or drops down chute for distribution to marking and classification sections.  Weighs laundry on scales and records weight on tickets. Removes bundles from conveyor and distributes to workers, using handtruck. Fastens identification pins or clips onto laundry to facilitate subsequent assembly of customers' orders. Sorts net bags containing clean wash according to customers' identification tags.  Sorts empty net bags according to color and size. Collects identification tags from lots of laundered articles for reuse.  Moistens clean wash preparatory to ironing.  Operates power hoist to load and unload washing machines and extractors.  Stacks linen supplies on storage room shelves. Unloads soiled linen from trucks.

DOT 361.687-018, *available at* 1991 WL 672992.  Plaintiff contends the conveyor belts, hand tucks and hoists listed in the description are hazards precluded by her RFC, and the ALJ had a duty "to inquire how frequently these jobs exposed workers to the very items Plaintiff was not meant to be exposed to at all." (Doc. 17 at 12).[5]

Plaintiff's contention attempts to invoke a more colloquial definition of "hazard" in her argument.  Plaintiff's arguments are unpersuasive considering the definitions in a social security context.  The Social Security Rulings define hazards as "moving mechanical parts of equipment,

---

[5] Plaintiff also contends a laundry laborer is likely exposed to wet floors, another hazard that would be impermissible with her RFC (though wet floors are not listed in the position's description).  This argument challenges the ALJ's RFC formulation and does not identify a conflict between the VE's testimony and the DOT. *Maxwell v. Saul*, 840 Fed. Appx. 896, 898 (9th Cir. 2020) ("Maxwell's speculation that environmental conditions such as wetness or humidity might 'constitute a hazard for an individual suffering from episodic dizziness in the work setting' is not a DOT conflict but a challenge to the ALJ's RFC formulation.")  Because the Plaintiff did not raise this argument below, it is waived.  *Ford v. Saul*, 950 F.3d 1141, 1158 (9th Cir. 2020).

tools, or machinery; electrical shock; working in high, exposed places; exposure to radiation; working with explosives; and exposure to toxic, caustic chemicals." Social Security Ruling (SSR) 96-9p, *available at* 1996 WL 374185, at *9. According to the DOT, a laundry laborer is not exposed to any hazards, and the DOT is the presumptive authority on job classifications. *See* Laundry Laborer, DOT 361.687-018, *available at* 1991 WL 672992 (listing "Not Present – Activity or condition does not exist" for moving mechanical parts, electric shocks, high exposed places, radiation, explosives and toxic caustic chemicals); *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995) (noting the DOT raises a presumption as to the job classification, though it is rebuttable). Other courts have also held when a DOT listing states that a particular position requires working near machinery (like a conveyer belt) but notes there is no exposure to moving mechanical parts—which the DOT defines as a hazard—there is no conflict between a VE's testimony and the DOT. *See, e.g.*, *Shahean J. v. Kijakazi*, No. 5:21-cv-01800-GJS, 2023 WL 1766190, at *3 (C.D. Cal. Feb. 3, 2023) ("Plaintiff's contention that the [jobs at issue] involve exposure to hazardous machinery is belied by the DOT job descriptions, which indicate that work in the proximity of moving mechanical parts is not required."); *Hardin v. Colvin*, No. No. 6:14–cv–01044–SB, 2015 WL 7766080, at *7 (D. Oregon Nov. 4, 2015) (although claimant could not be exposed to workplace hazards and the relevant position required working near a conveyer belt, the job description indicated moving mechanical parts were not present and therefore there was no conflict between the VE's testimony and the DOT) *report and recommendation adopted*, No. 6:14-CV-1044-SB, 2015 WL 7777889 (D. Or. Dec. 2, 2015); *Kirk T. v. Commissioner of Social Security*, No. 5:21-CV-292 (CFH), 2022 WL 2753567, at *12 (N.D. New York July 14, 2022) (claimant's RFC requiring him to avoid workplace hazards allows him to work with conveyer belts). Plaintiff has failed to identify a discrepancy between the DOT, the VE's testimony and her RFC because there is no evidence a laundry laborer is exposed to the hazards prohibited by her RFC.

The VE also testified her conclusions were consistent with the DOT (AR 58), which further demonstrates there is no apparent conflict between the VE's testimony and the DOT. *Wentz v. Commissioner Social Sec. Admin.*, 401 Fed. Appx. 189, 2010 WL 4269393, at *3 (9th Cir. 2010)

9

("Here, the ALJ asked the VE to identify any conflicts between her testimony and the DOT, and the VE identified none. [Claimant's] attorney then cross-examined the VE, but did not challenge her representation that her testimony comported with the DOT. Accordingly, the ALJ met his obligations . . . to investigate potential conflicts with the DOT, and his reliance on the VE testimony was therefore proper."). While an ALJ "cannot simply rely on the VE's testimony that there is no conflict between her testimony and the DOT when there is an apparent unresolved conflict," (*Trai Truong v. Saul*, No.: 18cv1660-MMA (MSB), 2019 WL 3288938 (S.D. Cal. July 19, 2019)), Plaintiff has failed to identify an apparent conflict between the VE's testimony and the DOT. Therefore the ALJ did not err by failing to address a discrepancy between the two.[6] Because the ALJ did not err in this respect, the ALJ's ultimate determination is supported by substantial evidence. *Anju M. v. Saul*, No. 8:18-cv-02267-KES, 2019 WL 5784176, at *3 (C.D. Cal. Nov. 6, 2019) ("In general, a VE's testimony (based on the DOT and experience) can be substantial evidence on which an ALJ is entitled to rely.") (citing *Biestek v. Berryhill*, 139 S. Ct. 1148 (2019)).

## V.   CONCLUSION AND ORDER

For the foregoing reasons, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Martin O'Malley, Commissioner of Social Security, and against Plaintiff Patricia Navarro.

IT IS SO ORDERED.

Dated:   **January 17, 2024**          /s/ *Sheila K. Oberto*
                                              UNITED STATES MAGISTRATE JUDGE

---

[6] Plaintiff does not contend there are insufficient laundry laborer positions available to support a finding of not disabled. The number of jobs available (49,000) exceeds the typical threshold required by courts. *See Gutierrez v. Colvin*, 740 F.3d 519, 527-29 (9th Cir. 2014) (finding 25,000 national jobs constituted work which existed in significant numbers).